# EXHIBIT A

Charles J. Kocher, Esq. – NJ ID No. 016952004
 cjk@njlegal.com
Gaetano J. DiPersia, Esq. – NJ ID No. 442152023
 gjd@njlegal.com
McOMBER McOMBER & LUBER, P.C.
50 Lake Center Drive, Suite 400
Marlton, New Jersey 08053
(856) 985-9800
*Attorneys for Plaintiff, Robert Negron*

| | |
|---|---|
| ROBERT NEGRON,<br><br>Plaintiff,<br><br>v.<br><br>BELL NURSERY USA LLC, CENTRAL GARDEN & PET COMPANY, ALLEN WATKINS, JAY NORDENBROCK, JB TRIMP, ABC CORPORATIONS 1-5 (fictitious names describing presently unidentified business entities); and JOHN DOES 1-5 (fictitious names of unidentified individuals),<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>CAMDEN COUNTY<br>DOCKET NO.:<br><br>Civil Action<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Robert Negron ("Plaintiff"), by way of filing his Complaint against Defendants Bell Nursery USA LLC, ("Defendant Bell") Central Garden & Pet Company ("Defendant Central") ("collectively "Corporate Defendants"), Allen Watkins ("Defendant Watkins") Jay Nordenbrock ("Defendant Nordenbrock") and JB Trimp ("Defendant Trimp") (collectively "Defendants"), alleges as follows:

## PARTIES

1. Plaintiff is an individual residing in Camden, New Jersey. At all times relevant hereto, Plaintiff was an "employee" of Defendant Bell as defined by New Jersey's Conscientious

Employee Protection Act, N.J.S.A 34:19-1 *et. seq.* ("CEPA") and the New Jersey Law Against Discrimination N.J.S.A. 10:5-1 *et seq.* ("NJLAD").

2. Defendant Bell is a Maryland corporation with a principal place of business at160000 Old Columbia Pike, Burtonsville, Maryland 20866. At all times relevant hereto, Defendant Bell is an "employer" as defined under CEPA and NJLAD.

3. Defendant Central is a California corporation with a principal place of business at 1340 Treat Blvd. Suite, 600, Walnut Creek, CA 94597. At all times relevant hereto, Defendant Central is an "employer" as defined under CEPA and NJLAD.

4. At all relevant times, Defendant Bell and Defendant Central have been single and joint employers of Plaintiff and others similarly situated within the meaning of New Jersey State Law. In this regard, their operations are interrelated and unified, and they share common management, centralized control of labor relations, common ownership, common control, common website, common business purposes, and interrelated business goals. In addition, they jointly determine and manage the pay practices, rates of employee pay and method of payment, maintenance of employee records and personnel policies, practices and decisions with respect to employees.

5. Defendant Watkins is an individual residing in Delaware, and at all times relevant hereto, is a Dispatcher at Defendant Bell. This claim is brought against Defendant Watkins in his individual capacity and/or as an agent, servant, representative, and/or employee of Defendant Bell during the course of his employment. At all times relevant hereto, Defendant Watkins is an "employer" as defined under CEPA and NJLAD.

6. Defendant Trimp is an individual residing in Pennsylvania, and at all times relevant hereto, is a Supervisor at Defendant Bell. This claim is brought against Defendant Trimp in his

2

individual capacity and/or as an agent, servant, representative, and/or employee of Defendant Bell during the course of his employment. At all times relevant hereto, Defendant Trimp is an "employer" as defined under CEPA and NJLAD.

7. Defendant Nordenbrock is an individual residing in Ohio, and at all times relevant hereto, is an HR Director at Defendant Bell. This claim is brought against Defendant Nordenbrock in his individual capacity and/or as an agent, servant, representative, and/or employee of Defendant Bell during the course of his employment. At all times relevant hereto, Defendant Nordenbrock is an "employer" as defined under CEPA and NJLAD.

8. Defendants ABC Corporations 1 through 5 are currently unidentified business entities who have acted in concert with Defendant Bell, and/or currently unidentified business entities responsible for the creation and/or implementation of harassment or anti-retaliation policies of Defendant Bell, and/or currently unidentified business entities who have liability for the damages suffered by Plaintiff under any theory advanced therein.

9. Defendants John Does 1 through 5 are currently unidentified individuals who acted in concert with Defendants and/or currently unidentified individuals responsible for the creation and/or implementation of harassment or anti-retaliation policies of Defendant Bell and are currently unidentified individuals who may have liability for the damages suffered by Plaintiff under any theory advanced herein.

## FACTS COMMON TO ALL CLAIMS

10. Plaintiff incorporates each and every allegation set forth above as if set forth fully herein at length.

11. Plaintiff began his employment with Defendant Bell as a CDL driver in October of 2020.

3

12. Defendant Bell is a wholesale nursery grower that operates throughout the nation, including in Bridgeton, New Jersey, where Plaintiff was based.

13. Defendant Watkins is a dispatcher at Defendant Bell, and was responsible for assigning Plaintiff his routes. Defendant Nordenbrock is an HR Director for Defendant Bell. Defendant Trimp was Plaintiff's supervisor.

**Plaintiff's Workers' Compensation Case**

14. In September of 2024, Plaintiff was injured on the job, and was required to go on a leave of absence to address his injuries.

15. In connection with his injuries, Plaintiff commenced a workers' compensation lawsuit against Defendant Bell, as was his right to do.

16. By commencing a workers' compensation case against Defendant Bell, Plaintiff engaged in protected conduct under the NJLAD.

17. Plaintiff looked forward to returning to work as soon as he was physically able, but Defendant Nordenbrock made it as difficult as possible for him. Ultimately, Plaintiff returned to work in April of 2025 and immediately began experiencing retaliation for bringing the workers' compensation claim against Defendant Bell.

18. First, with no basis, Plaintiff was accused by Defendant Nordenbrock of defecating in a trailer. This was untrue, and in fact, the incident in question occurred prior to Plaintiff returning from his leave.

19. Further, Defendants began to accuse Plaintiff of failing to complete post trip inspections, despite Plaintiff doing them each time he returned from a trip, and prior to each trip he took.

4

20. Finally, Plaintiff was accused of doing his job "incorrectly." Plaintiff rebutted these claims, and informed Defendant Nordenbrock that he was not given the tools to do the job how Defendant Nordenbrock believed he should. Plaintiff was being set up to fail.

21. Importantly, prior to beginning his workers' compensation claim, Plaintiff had never received a negative performance review.

22. While Plaintiff attempted to navigate an increasingly retaliatory work environment, he sought to make his concerns known to his supervisors and Defendant Bell's HR employees.

## Plaintiff Engages in Protect Whistleblowing Conduct by Complaining About Safety Concerns

23. Fed up with the retaliatory treatment he had been experiencing since returning from leave, Plaintiff notified his supervisors, and Defendant Bell's HR department, via email on August 15, 2025 that he felt he was the subject of retaliation.

24. In tandem with his complaint about retaliation, Plaintiff pointed out numerous safety hazards he had witnessed on the job and Defendant Watkins' continued pressure to ignore them. Plaintiff addressed his email to Defendants Nordenbrock, Watkins and Trimp, as well as two HR employees of Defendant Central, the entity the owns Defendant Bell.

**From:** Vincent negron <bigipapi.negron@gmail.com>
**Date:** August 15, 2025 at 8:29:45 AM EDT
**To:** mwuestenberg@central.com
**Cc:** Jay Nordenbrock <jnordenbrock@central.com>, Allen Dispatch WATKINS <Alan.earnshaw@bellnursery.com>, Joanna HR Díaz <joannadiaz@central.com>, JB Nursery Trimp <JB.Trimp@bellnursery.com>
**Subject: Hello HR**

Good morning Mary of Central and Garden. I'm reaching out today because I'm hoping you can address some concerns of mine, because once again I feel like I'm being unlawfully targeted in retaliation.
Wednesday night going into Thursday. I arrive at Bell Nursery to start my shift and I found that I had a Screw sticking out of my tire and it was going flat. I then reached out to my dispatcher Allen WATKINS. He told me not to call Repair originally and to take another truck, which is 215622. This particular truck. I have refused to take it several times because the driver of the truck does not do pre-trip And the truck has several bald tires that are not in compliance with federal DOT regulation. I have also informed Allen WATKINS of this issue multiple times via text messages and phone calls and the issue was never resolved. After my truck was repaired. I then went to farm four to retrieve my loaded trailer to make delivery, but then soon I found out that the Extra Trailer Q 22344 had a flat tire as well caused from a cracked rim. After six hours of waiting in total for repair I was done and I decided I would go home and not deliver a load fatigued Thursday night going into Friday. I learned that my truck was taken to Repair for preventative maintenance, And another issue that it was having. When I arrived to the job and I was commanded by Allen WATKINS to use truck 215622. Once again nobody made the repairs for the truck which delayed me about another 2 1/2 hours for Repair. While waiting for Repair Allen WATKINS called me And was apologetic about him not doing his job in getting the tire repaired and afterwards JB Trimp Calls me and starts to be confrontational. About me, pointing out the fact that the truck 215622 was not in DOT compliance and that miraculously, I am the only one having an issue with equipment. I feel like now my equipment is being sabotage on purpose to delay me or possibly harm me. I would love to have gone to Jay Nordenbrock about this issue, but there's a conflict of interest with me and him but also because JB Trimp is a friend of Jay Nordenbrock. I don't feel it right that nobody is accountable for what is happening when I have done my job as an employee and report it, an unsafe work condition several times and it has fallen on deaf ears, and nobody is being held accountable except for Robert. I will send a separate email with pictures of what this email was regarding.

25. Plaintiff specifically noted that he felt he was being forced to drive a truck by Defendant Watkins that was "not in compliance with federal DOT regulation."

26. Plaintiff specifically pointed out tire requirements, which are governed by 49 C.F.R. 393.75.

27. In doing so, Plaintiff engaged in protected whistleblowing conduct under CEPA as he communicated his reasonable good faith belief that driving this specific truck would constitute a violation of a law, rule or regulation.

28. Despite his complaints, Plaintiff was continuously directed to drive the unsafe truck. And, as stated in Plaintiff's email, Defendant Trimp immediately chastised Plaintiff for making his complaints.

6

29. Plaintiff again engaged in protected conduct when he explicitly stated "I don't feel it [sic] right that nobody is accountable for what is happening when I have done my job as an employee and report it, *an unsafe work condition several times and it has fallen on deaf ears*, and nobody is being held accountable except for [Plaintiff]."

30. Plaintiff did exactly what he was supposed to do to protect himself and Defendant Bell, but he would almost immediately begin to face further retaliation for his protected whistleblowing activity.

### Defendants Retaliate Against Plaintiff

31. Just ten days after his written complaint about safety concerns and retaliation, Plaintiff was written up.

32. The purported reason for the write up was "job performance," with no limited elaboration. This was blatant retaliation for Plaintiff's protected conduct on August 15, 2025.

33. Plaintiff disputed the write-up and explained that he was being given assignments that would not comply with DOT regulations. Specifically, Plaintiff stated that he was given trips that would require 20-hour workdays, even though Plaintiff reasonably believed DOT regulations limited the time he could consecutively drive to 14 hours. See 49 C.F.R. 395.

34. Plaintiff was being written up for his attempts to comply with the law.

35. Soon thereafter, Plaintiff was written up again, this time for purportedly failing to do a pre-trip inspection. This was untrue, as Plaintiff always completed his inspections both before and after a trip. Indeed, the importance of these inspections was mentioned by Plaintiff in his August 15 email to Defendants. Again, Plaintiff disputed the writeup.

36. The retaliation did not stop with the bogus writeups, and soon Plaintiff experienced the ultimate adverse employment action.

7

37. On October 15, 2025, Plaintiff received a call from Defendants, and his employment was terminated.

38. At the time of his termination, Plaintiff had been a dedicated employee for approximately five years at Defendant Bell.

39. Despite that, Defendants no longer wished to endure Plaintiff's continued objections to their unlawful practices related to their unsafe workplace, and swiftly retaliated against him for same.

40. Plaintiff was met with the most blatant form of retaliation for bringing Defendants illegal practices and disregard for the safety to light. In doing so Defendants violated CEPA.

41. Further, Plaintiff was retaliated against in violation of the NJLAD as he faced increased scrutiny and bogus accusations only *after* he commenced a workers' compensation claim against Defendants. Plaintiff had the right to pursue his workers' compensation claim, and was punished for it.

## COUNT ONE

## RETALIATION IN VIOLATION OF THE NEW JERSEY CONSCIENTIOUS EMPLOYEE PROTECTION ACT ("CEPA")

42. Plaintiff incorporates each and every allegation set forth above as if set forth fully herein at length.

43. CEPA's legislative purpose "is to protect and encourage employees to report illegal or unethical workplace activities and to discourage . . . employers from engaging in such conduct." Lippman v. Ethicon, Inc., 222 N.J. 362, 378 (2015) (quoting Abbamont v. Piscataway Twp. Bd. of Educ., 138 N.J. 405, 431 (1994)).

44. CEPA specifically provides:

8

<u>An employer shall not take any retaliatory action against an employee because the employee does any of the following</u>:

a. <u>Discloses, or threatens to disclose <u>to a supervisor</u> or to a public body an activity, policy or practice of the employer, or another employer, with whom there is a business relationship, that the employee reasonably believes</u>:

(1) is in violation of a law, or a rule or regulation promulgated pursuant to law, including any violation involving deception of, or misrepresentation to, any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity, or, in the case of an employee who is a licensed or certified health care professional, reasonably believes constitutes improper quality of patient care; or

(2) is fraudulent or criminal, including any activity, policy or practice of deception or misrepresentation which the employee reasonably believes may defraud any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity;

b. Provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law by the employer, or another employer, with whom there is a business relationship, including any violation involving deception of, or misrepresentation to, any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity, or, in the case of an employee who is a licensed or certified health care professional, provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into the quality of patient care; or

c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:

(1) is in violation of a law, or a rule or regulation promulgated pursuant to law, including any violation involving deception of, or

>       misrepresentation to, any shareholder, investor,
>       client, patient, customer, employee, former
>       employee, retiree or pensioner of the employer or
>       any governmental entity, or, if the employee is a
>       licensed or certified health care professional,
>       constitutes improper quality of patient care;
>
> (2)   is fraudulent or criminal, including any activity,
>       policy or practice of deception or misrepresentation
>       which the employee reasonably believes may
>       defraud any shareholder, investor, client, patient,
>       customer, employee, former employee, retiree or
>       pensioner of the employer or any governmental
>       entity; or
>
> (3)   is incompatible with a clear mandate of public
>       policy concerning the public health, safety or
>       welfare or protection of the environment.
>
> [N.J.S.A. 34:19-3 (emphasis added).]

45. In the course of his employment with Defendants, Plaintiff submitted complaints to Defendants regarding the unlawful practices and other violations of New Jersey Law. Plaintiff reasonably believed that these practices were in violation of Federal and State laws and regulations, including but not limited to 49 C.F.R. 393.75, 49 C.F.R. 395 and N.J.S.A § 34:19-3(a)(1).

46. Plaintiff engaged in protected activity under CEPA and raised his complaints to advocate for himself and other employees who potentially would have to drive the unsafe machinery.

47. Defendants had knowledge of Plaintiff's complaints and/or protests.

48. As a direct result of Plaintiff raising complaints and/or reporting his belief that Defendants were engaging in unlawful conduct, Defendants took retaliatory action against Plaintiff by discharging him from employment on October 15, 2025.

49. Defendants are vicariously, strictly, and/or directly liable to Plaintiff for an unlawful retaliatory discharge in violation of CEPA, pursuant to N.J.S.A. § 34:19-1, *et. seq.*

50. As a proximate result of the aforementioned acts and omissions set forth herein, Plaintiff has sustained damages.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants on this Count, together with compensatory and equitable relief, all remedies available under CEPA, punitive damages, pre- and post-judgment interest, attorneys' fees and costs of suit, and for such other relief that the Court deems equitable and just. More specifically, Plaintiff demands judgment against Defendants for harm suffered in violation of CEPA as follows:

A. Reinstatement of employment and all benefits;
B. Back pay and benefits;
C. Front pay and benefits;
D. Compensatory damages;
E. Consequential damages;
F. Reinstatement;
G. Punitive damages;
H. Prejudgment interest and enhancements to off-set negative tax consequences;
I. Any and all attorneys' fees, expenses and/or costs, including but not limited to court costs, expert fees, and all attorneys' fees incurred by Plaintiff in the prosecution of this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law);
J. Such other relief as may be available pursuant to CEPA and which the Court deems just and equitable;
K. Ordering Defendants to take appropriate corrective action to stop and prevent retaliation at the workplace;
L. Ordering Defendants to take appropriate corrective action to stop and prevent harassment at the workplace;
M. Ordering Defendants to undergo anti-retaliation training;
N. Ordering Defendants to undergo anti-harassment training;
O. Ordering Defendants to undergo workplace civility training;
P. Ordering Defendants to undergo bystander intervention training;
Q. Ordering Defendants to engage a research organization to assess the effectiveness of their anti-retaliation training;
R. Ordering Defendants to engage a research organization to assess the effectiveness of their anti-harassment training;
S. Ordering Defendants to engage a research organization to assess the effectiveness of their workplace civility training;
T. Ordering Defendants to engage a research organization to assess the effectiveness of their bystander intervention training;

11

- U. Ordering Defendants to identify an appropriate professional to investigate any future complaints of discrimination;
- V. Ordering Defendants to identify an appropriate professional to investigate any future complaints of harassment;
- W. Ordering Defendants to identify an appropriate professional to investigate any future complaints of retaliation; and
- X. Such other relief as may be available and which the Court deems just and equitable.

## COUNT TWO

### NJLAD – RETALIATION/IMPROPER REPRISAL

44. Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

45. Defendants took retaliatory action against Plaintiff by subjecting him to disparate treatment and/or by terminating him from employment.

46. Defendants took retaliatory action against Plaintiff as a result of him opening of a workers' compensation lawsuit against Defendant Bell.

47. Defendants are vicariously, strictly, and/or directly liable to Plaintiff for an unlawful retaliatory discharge in violation of the NJLAD pursuant to N.J.S.A. 10:5-12(d).

48. As a proximate result of the aforementioned acts and omissions set forth herein, Plaintiff has sustained damages.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants on this Count, together with compensatory and equitable relief, all remedies available under the law, punitive damages, pre-and post-judgment interest, and attorney's fees and costs of suit. More specifically, Plaintiff demands judgment against Defendants for harm suffered in violation of the NJLAD as follows:

- A. Reinstatement of employment and all benefits;
- B. Back pay and benefits;
- C. Front pay and benefits;

12

D. Compensatory damages;
E. Consequential damages;
F. Reinstatement;
G. Punitive damages;
H. Prejudgment interest and enhancements to off-set negative tax consequences;
I. Any and all attorneys' fees, expenses and/or costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Plaintiff in the prosecution of this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law);
J. Such other relief as may be available pursuant to the NJLAD and which the Court deems just and equitable;
K. Ordering Defendants to take appropriate corrective action to stop and prevent retaliation at the workplace;
L. Ordering Defendants to take appropriate corrective action to stop and prevent harassment at the workplace;
M. Ordering Defendants to undergo anti-discrimination training;
N. Ordering Defendants to undergo anti-retaliation training;
O. Ordering Defendants to undergo anti-harassment training;
P. Ordering Defendants to undergo workplace civility training;
Q. Ordering Defendants to undergo bystander intervention training;
R. Ordering Defendants to engage a research organization to assess the effectiveness of their anti-discrimination training;
S. Ordering Defendants to engage a research organization to assess the effectiveness of their anti-retaliation training;
T. Ordering Defendants to engage a research organization to assess the effectiveness of their anti-harassment training;
U. Ordering Defendants to engage a research organization to assess the effectiveness of their workplace civility training;
V. Ordering Defendants to engage a research organization to assess the effectiveness of their bystander intervention training;
W. Ordering Defendants to identify an appropriate professional to investigate any future complaints of discrimination;
X. Ordering Defendants to identify an appropriate professional to investigate any future complaints of harassment;
Y. Ordering Defendants to identify an appropriate professional to investigate any future complaints of retaliation; and
Z. Such other relief as may be available and which the Court deems just and equitable.

## COUNT THREE

## WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

49. Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

13

50. As set forth herein, Plaintiff reported and complained about Defendants' unlawful practices. Defendants had knowledge of Plaintiff's protests and terminated him as a result thereof.

51. The acts of Defendants constitute a wrongful discharge in violation of public policy by which Plaintiff has been damaged and will continue to suffer damages.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants on this Count, together with compensatory and equitable relief, all remedies available under the law, punitive damages, pre-and post-judgment interest, attorneys' fees and costs of suit, and for such other relief that the Court deems equitable and just.

## DEMAND FOR DISCOVERY OF INSURANCE COVERAGE

Pursuant to *Rule* 4:10-2(b), demand is made that Defendants disclose to Plaintiff's attorney whether or not there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy part or all of the judgment which may be entered in this action or indemnify or reimburse for payments made to satisfy the judgment and provide Plaintiff's attorney with true copies of those insurance agreements or policies, including, but not limited to, any and all declaration sheets. This demand shall include and cover not only primary insurance coverage, but also any excess, catastrophe, and umbrella policies.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues.

McOMBER McOMBER & LUBER, P.C.
*Attorneys for Plaintiff Robert Negron*

By: /s/ Charles J. Kocher, Esq.
CHARLES J. KOCHER, ESQ.

Dated: January 13, 2026

14

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, CHARLES J. KOCHER, ESQUIRE is hereby designated as trial counsel for Plaintiff.

## CERTIFICATION

Pursuant to Rule 4:5-1, it is hereby certified that, to the best of my knowledge, there are no other civil actions or arbitration proceedings involving this matter with respect to this matter and no other parties need to be joined at this time.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

McOMBER McOMBER & LUBER, P.C.
*Attorneys for Plaintiff Robert Negron*


By: /s/ Charles J. Kocher, Esq.
CHARLES J. KOCHER ESQ.

Dated: January 13, 2026